RECEIVED
JUN 1 8 2010
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN WEISSMANN, On Behalf Of Himself And All Others Similarly Situated, | ) )  Civil Action No. |
| Plaintiff,- | )  CLASS ACTION COMPLAINT |
| v. | ) **10 CIV 4775** |
| CHINA NORTH EAST PETROLEUM HOLDINGS LIMITED, HONGJUN WANG, YANG ZHANG, and GUIZHI JU, | ) ) |
| Defendants. | )  **JURY TRIAL DEMANDED** |

Plaintiff Steven Weissmann ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things: a review of the defendants' public documents; conference calls and announcements made by defendants; Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding China North East Petroleum Holdings Limited ("China North" or the "Company"); securities analysts' reports and advisories about the Company; and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.     This is a securities fraud class action on behalf of all persons who purchased or acquired China North securities, including purchasers of common stock, call options and sellers of put options during the period from August 14, 2009 through and including May 26, 2010 (the "Class Period"). This class action is brought under Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

2. Throughout the Class Period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, defendants made false and/or misleading statements and/or failed to disclose that (1) the Company's top executive and a director engineered improper cash transfers between bank accounts of the Company and their personal accounts; (2) the Company improperly accounted for certain warrants as liability instruments rather than equity instruments; (3) the Company improperly calculated the net carrying value of its oil and gas properties; (4) the Company had internal and disclosure controls with respect to its business development activities, and accounting of its accounts payables were materially deficient; (5) as a result of the foregoing, China North's financial statements were not fairly presented in conformity with Generally Accepted Accounting Principles ("GAAP") and were materially false and misleading; and (6) based on the foregoing, defendants lacked a basis for their positive statements about the Company, its prospects and growth.

3. On March 8, 2010, China North disclosed that the Company had determined that its financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon and should be restated as a result of certain non-cash errors contained therein regarding the accounting for: (i) warrants issued in conjunction with a secured debenture on February 28, 2008, which warrants should have been classified according to Emerging Issues Task Force 00-19 as liability instruments rather than equity instruments; (ii) the change in the fair value of those warrants from the date of issuance through the end of the

reporting period; (iii) effective interest expense arising from amortization of the discount to the carrying value of the secured debenture; (iv) the recording of warrants issued to investment consultants in connection with the secured debenture as deferred financing costs instead of consulting fees; (v) the amount of amortization of deferred financing costs associated with the issuance of that secured debenture; (vi) amounts payable to a consultant included in accrued liabilities; (vii) compensation issued to employees in the form of stock; (viii) depreciation, depletion and amortization of oil producing properties; (ix) ceiling test reduction of the net carrying value of oil producing properties; (x) income tax expense for the above items; and (xi) minority interests for certain of the above items. As it was further disclosed on April 20, 2010, the total adjustment to the Company's net income for the year 2008 and the first three quarters of 2009 was estimated to be more than $28 million.

4.     Subsequently, on May 25, 2010, the NYSE AMEX halted the China North's stock for non-compliance with AMEX's listing criteria. China North stock has not resumed trading since that time. On May 27, 2010, the Company disclosed the resignation of the Company's Chairman of the Board, CFO, a director, and the placement of the CEO on administrative leave pending the outcome of the current forensic audit. The forensic audit preliminarily found that in 2009, cash transfers occurred between the bank accounts of the Company and its subsidiaries and the personal bank accounts of the Company's CEO and a director who is also the mother of the CEO.

5.     As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  China North common stock is traded on the NYSE AMEX (American Stock Exchange) which is located in the Southern District of New York.

9.    In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

**Plaintiff**

10.    Plaintiff as set forth in his certification attached hereto purchased China North securities during the Class Period and was damaged when the disclosures of the Company's accounting improprieties caused the price of China North shares to decline.

**Defendants**

11.    Defendant China North is a Nevada Corporation with its principal executive offices located at 445 Park Avenue, 10th Floor, New York, NY 10022.  China North through its operating subsidiaries engages in the exploration and production of crude oil in the People's Republic of China.   The aggregate number of shares of China North securities outstanding as of

November 12, 2009 is approximately 25.8 million shares. China North is actively traded on the NYSE AMEX under the ticker symbol "NEP."

12.    Defendant Hongjun Wang ("Wang") was at all relevant times herein the Company's Chairman, President and Chief Executive Officer.

13.    Defendant Yang Zhang ("Zhang") was at all relevant times herein the Company's Chief Financial Officer.

14.    Defendant Guizhi Ju ("Ju") was a Company Director beginning on November 20, 2009 until the end of May 2010. Ju serves as a General Manager and Director of Songyuan Yu Qiao Oil & Gas Development Co., Ltd. Ju is the mother of defendant Wang.

15.    The defendants referenced above in ¶¶ 12-14 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background**

16.    China North is engaged in the exploration and production of crude oil in Northern China. As of December 31, 2008, the Company operated 247 producing wells located in four oilfields in Northern China. The Company, through two of its subsidiaries Songyuan Yu Qiao Oil and Gas Development Ltd. Corp. and Longde Oil and Gas Development Co. Limited, sells the crude oil production for use in the China marketplace.

**Defendants' False and Misleading Statements**

17.    On August 14, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009. The Company reported revenues of $11.3 million, compared to $14.2 million in the second quarter of 2008. The Company also reported net income of $2.8 million, or $0.13 per diluted share, compared to net income of $3.9 million, or $0.18 per diluted share in the second quarter of 2008.

5

18.    Also on that day, the Company filed a quarterly report on Form 10-Q for the second quarter ended June 30, 2009 with the SEC, which was signed by defendants Wang and Zhang.  In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by defendants Wang and Zhang, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

19.    On September 16, 2009, the Company issued a press release announcing that it had entered into definitive agreements to sell 4 million shares of its common stock in a registered direct offering to several select institutional investors, representing $18.4 million.  On September 21, 2009, the Company announced the closing of the transaction.

20.    On November 16, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009.  The Company reported revenues of $14.4 million, compared to $19 million in the third quarter of 2008.  The Company further reported net income of $4.1 million, or $0.17 per diluted share for the quarter, compared to $5 million, or $0.24 per diluted share in the same period of the prior year.

21.    Also on that day, the Company filed a quarterly report on Form 10-Q for the third quarter ended September 30, 2009 with the SEC, which was signed by defendants Wang and Zhang.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by defendants Wang and Zhang, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

22.    On November 24, 2009, the Company issued a press release announcing the appointment of defendant Ju to the Company's Board of Directors, effectively immediately.

6

23.   On December 14, 2009, the Company announced that it had entered into definitive agreements to sell over 1.9 million shares of its common stock pursuant to a registered direct offering to several select institutional investors, representing proceeds of $13.5 million.

24.   The statements referenced above in ¶¶ 17, 18, 20, and 21 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company's top executive and a director engineered improper cash transfers between bank accounts of the Company and their personal accounts; (2) the Company improperly accounted for certain warrants as liability instruments rather than equity instruments; (3) the Company improperly calculated the net carrying value of its oil and gas properties; (4) the Company had internal and disclosure controls with respect to its business development activities, and accounting of its accounts payables were materially deficient; (5) as a result of the foregoing, China North's financial statements were not fairly presented in conformity with GAAP and were materially false and misleading; and (6) based on the foregoing, defendants lacked a basis for their positive statements about the Company, its prospects and growth..

**The Truth Slowly Begins to Emerge**

25.   On February 23, 2010, after the market closed, China North shocked the market, disclosing for the first time that it would have to revise previously issued financial statements for 2008 and 2009.  Specifically, the Company disclosed in relevant part:

> [A]s a result of the preparation of responses to comments the Company received from the Securities and Exchange Commission (the "SEC") in connection with the SEC's review of the Company's Form 10-K for the year ended December 31, 2008, the Board of Directors of the Company determined that the Company's financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon as a result of certain non-cash errors .  .

contained therein regarding the accounting for: (i) warrants issued in conjunction with certain financings in 2008 and 2009, which warrants should have been classified according to EITF-0019 as liability instruments rather than equity instruments; (ii) interest expense calculated using the effective interest method that should have been recorded in each of the reporting periods in question, arising from those certain financings in 2008 and 2009; (iii) changes in the fair value of the reclassified warrants; (iv) ceiling test impairment calculations prepared by the Company for the reporting periods ended December 31, 2008 and March 31, 2009; (v) depreciation, depletion and amortization expenses related to the company's oil and gas properties, net; (vi) recognition of employee stock-based compensation expense; and (vii) a modification of the February 28, 2008 secured debenture that occurred on March 5, 2009, which modification should have been treated as an extinguishment pursuant to EITF 96-19.

26.    As a result of the disclosures, China North securities dropped $0.69 or more than 7% to close at $8.68 on February 24, 2010.

27.    On March 8, 2010, the Company issued a press release announcing additional changes including "changes in the Company's reported income tax expense and minority interests in certain of the restated reporting periods." Moreover, the press release disclosed in relevant part:

> The ceiling test charges (which resulted in a reduction in carrying value of oil and gas properties) were caused by several errors in the method used by the Company in the calculation. These errors included: a) a computational error which caused incorrect discounting of future estimated cash flows, and b) incorrect tax expense assumptions incorporated in the future estimated cash flow model used by our reserve engineers. As a result of the ceiling test impairments recognized at December 31, 2008 and March 31, 2009, the net carrying value of oil and gas properties was reduced on those dates from $70,193,852 to $67,934,989 and from $67,671,268 to $56,462,878, respectively. Additional detailed balance sheet effects, primarily affecting the Company's retained earnings and additional paid-in capital, will be provided in the forthcoming amended financial reports.

28.    On April 15, 2010, the Company issued a press release announcing that it was delaying the filing of its annual report for fiscal 2009 on Form 10-K with the SEC, and that it

was postponing the release date for its fiscal 2009 year ended financial results. This disclosure caused China North securities to fall $0.75 or 7.5% and closed at $9.10 on April 15, 2010.

29.    The next day, the Company issued a press release disclosing that NYSE AMEX advised the Company that it was not in compliance with NYSE AMEX's continuing listing criteria because the Company failed to timely file its annual report for fiscal year December 31, 2009. Further, the Company disclosed that it has "identified certain potential internal control deficiencies over financial reporting in connection with certain expenditures relating to business development activities and the accounting treatment of certain of the Company's accounts payables." Consequently, the Company's Audit Committee will "conduct a thorough review of the situation and to determine what corrective action, if any, should be taken."

30.    As a result of these additional disclosures, China North securities fell $1.02 or more than 11% for the next two trading sessions and closed at $8.08 on April 19, 2010.

31.    On April 20, 2010, the Company filed a Form 8-K/A with the SEC setting forth further adjustments to its financial statements for the fiscal year ended December 31, 2008, all the interim periods in 2008 and the first three quarters of 2009. Specifically, the Company disclosed that the total adjustment to the Company's net income for the year 2008 and the first three quarters of 2009 was estimated to be more than $28 million. The Company also disclosed "that its independent reserve engineer had been utilizing an incorrectly low factor for the calculation of the Company's future projected lease operating expenses; when this was corrected the calculation resulted in a substantially reduced ceiling test value at December 31, 2008 and March 31, 2009, and a correspondingly greater ceiling test impairment figure for each of those periods."

32.    On May 27, 2010, the Company issued a press release announcing that NYSE

AMEX had halted trading of the Company's stock on May 25, 2010.  The press release revealed

further details into the Company's restatement and a number of key resignations of members of

management.    Specifically, the Company disclosed that defendant Zhang resigned as the

Company's Chief Financial Officer, defendant Wang resigned as the Chairman of the Board and

was on administrative leave as the Chief Executive Officer, and defendant Ju resigned as a

director of the Company.  The Company also disclosed the following in relevant part:

> On April 19, 2010, the Audit Committee retained the services of John
> Lees Associates Limited of Hong Kong ("JLA") to conduct a forensic
> audit of the Company"s bank accounts with respect to the expenditures
> relating to business development activities in question. The forensic audit
> preliminarily found that in 2009, cash transfers occurred between the bank
> accounts of the Company and its subsidiaries and the personal bank
> accounts of Mr. Hongjun Wang, the Company's chief executive officer,
> and Ms. Guizhi Ju, a Company director and mother of Mr. Hongjun Wang.
> The forensic audit has confirmed that some of the transferred funds were
> used to pay the Company's expenses. To date, there is no indication that
> any of the funds were used for personal purposes. The forensic audit is
> ongoing.

> Immediately following the JLA preliminary report, on May 6, 2010, the
> Board of Directors adopted a specific policy that none of its assets,
> including cash, should be transferred or paid to any officer or director of
> the Company or its subsidiaries for any purpose without the approval of
> the Audit Committee other than (i) payment of transfers pursuant to
> service agreements between the Company and its officers and directors
> duly authorized and adopted by the Board of Directors or its committees;
> or (ii) reimbursement of reasonable expenses not exceeding $10,000 in
> any given week.

### CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired China North securities, including purchasers of common stock, call options

and sellers of put options during the Class Period (the "Class"); and were damaged thereby.

Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China North securities were actively traded on the NYSE AMEX. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by China North or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China North;

- whether the Individual Defendants caused China North to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of China North securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- China North securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE AMEX, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold China North securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF
## COUNT I
**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of China North securities; and (iii) cause Plaintiff and other members of the Class to purchase China North securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the

quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for China North securities and options. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about China North's finances and business prospects.

45.    By virtue of their positions at China North, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of China North securities from their personal portfolios.

47.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of China North, the Individual Defendants had knowledge of the details of China North internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of China North.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to China North's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of China North securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning China North's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased China North securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by defendants and were damaged thereby.

49.     During the Class Period, China North securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of China North securities and options at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares and options, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of China North securities and options were substantially lower than the prices paid by Plaintiff and the other members of

the Class. The market price of China North securities and options declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

52.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    (a)    During the Class Period, the Individual Defendants participated in the operation and management of China North, and conducted and participated, directly and indirectly, in the conduct of China North's business affairs. Because of their senior positions, they knew the adverse non-public information about China North's misstatement of income and expenses and false financial statements.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China North's financial condition and results of operations, and to promptly correct any public statements issued by China North which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

16

releases and public filings which China North disseminated in the marketplace during the Class Period concerning China North's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause China North to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of China North within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China North securities and options.

54.      Each of the Individual Defendants, therefore, acted as a controlling person of China North. By reason of their senior management positions and/or being directors of China North, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause China North to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of China North and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55.      By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by China North.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.       Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.       Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated:  June 18, 2010

POMERANTZ HAUDEK GROSSMAN
& GROSS LLP

By
—————————————————
Marc I. Gross

Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN
& GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: 312-377-1181
Fax: 312-377-1184

*Counsel for Plaintiff*

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, Steven Weissmann, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against China North East Petroleum Holdings, Ltd. ("NEP"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my NEP securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz Firm will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in NEP securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed _June 17, 2010_, at _New York, NY_
          (Date)                          (City, State)

_Steven L Weissmann_
                (Signature)

_Steven Weissmann_
           **Steven Weissmann**

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 4/29/10 | Purchase | 400 | $8.78 |
|  |  |  |  |
|  |  |  |  |
| 4/29/10 | Sale | 4 Calls | $0.45 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |